**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Arnold, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>Standard Pacific of Arizona Incorporated, et al.,<br><br>   Defendants. | No. CV-16-00452-PHX-DGC<br><br>**ORDER** |

Plaintiff asks the Court to enter a declaratory judgment that the arbitration clause in Defendants' limited warranty is unenforceable as a matter of law. Doc. 19. The motion has been fully briefed (Docs. 25, 26), and the Court heard oral arguments on August 10, 2016. For the reasons that follow, the Court will rule in Plaintiff's favor.

**I.     Background.**

Plaintiff purchased a single-family home in Avondale, Arizona, from Defendant Standard Pacific of Arizona, Inc. Doc. 25 at 18.[1] The purchase contract provides that "any disputes or claims or controversies of any type between buyer . . . and seller . . . arising out of or relating to this contract, the property, the house, or any other matter . . . shall be resolved pursuant to the procedures specified in the [ADR] addendum." *Id.* at 2. The contract also includes a limited warranty ("Warranty") covering certain construction defects. Doc. 20-1.

---

[1] Citations in this order are to page numbers placed on the top of each page by the Court's CMECF system, not to the original numbers on the pages.

1     The ADR addendum provides that arbitration shall be governed by the procedures set forth in the Warranty. Doc. 20-2 at 9. The Warranty states that Defendants have contracted with an entity known as Professional Warranty Service Corporation, referred to in the Warranty as "PWC," for "administrative services relative to this LIMITED WARRANTY." Doc 25 at 32. Section VIII of the Warranty contains the following relevant arbitration provisions:

> Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representative.
>
> * * *
>
> The arbitration shall be conducted by Construction Arbitration Services, Inc., or such other reputable arbitration service that PWC shall select, at its sole discretion, at the time arbitration is submitted.
>
> * * *
>
> Based upon the arbitrator's decisions, WE shall choose whether WE shall (1) repair, replace the CONSTRUCTION DEFECT, (2) pay to YOU the actual amount it would cost US to repair or replace the CONSTRUCTION DEFECT, or (3) PAY to YOU an amount equal to the diminution in fair market value caused by the CONSTRUCTION DEFECT. The decision to repair, replace, or to make payment to YOU is at OUR or OUR authorized representative's sole option.
>
> * * *
>
> YOU should contact PWC . . . if YOU believe WE have not complied with the arbitrator's award. PWC will mediate this dispute and if it cannot be resolved, will advise YOU that a compliance inspection arbitration is available to determine whether WE have performed adequately under the original arbitration ward.

Doc. 25 at 37-38. The capitalized words in this provision are defined terms, with "us," "our," and "we" referring to Defendants. The parties agree that Construction Arbitration Services, Inc. is no longer in business. Thus, under this clause, PWC alone selects the service that will arbitrate Plaintiff's claims.

The ADR addendum includes a fallback provision which takes effect in the event the Warranty arbitration provision is "determined to be unenforceable in whole or material part." Doc. 25 at 26. The fallback provision states that any disputes between the parties shall be submitted to the American Arbitration Association ("AAA"). *Id.*

In August 2015, Plaintiff filed a demand for arbitration with the AAA, alleging construction defects in her home. Doc. 16, ¶ 20. The AAA appointed Jeffrey S. Cates, a retired Maricopa County Superior Court Judge, to serve as arbitrator. ¶ 21. Defendants filed a motion to dismiss, arguing that Plaintiff was not entitled to proceed under the fallback provision because the Warranty arbitration provision had not been found invalid. ¶ 22. Judge Cates agreed, holding that "without a determination first being made by a *court of law* that the [arbitration provision] is unenforceable, the [AAA] does not have jurisdiction to render further rulings in this case." Doc. 20-6 at 3 (emphasis in original). Judge Cates stayed the arbitration proceeding to allow Plaintiff to seek a ruling on the validity of the Warranty arbitration provision. *Id.*

## II.   Legal Standards.

### A.   Summary Judgment.

The Court will treat Plaintiff's request for declaratory relief as a motion for summary judgment. *See Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B.   Federal Arbitration Act and Applicable Law.

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added). The Supreme Court has held that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also*

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921 (9th Cir. 2013) ("Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability.").

The Supreme Court has recognized that choice-of-law issues can arise when an arbitration clause is challenged. The Court has explained that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, 'save upon such grounds as exist at law or in equity for the revocation of any contract.' Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Arbitration-specific state laws are inconsistent with the FAA and cannot be applied. *Id.*

The parties do not address which law should be applied to Plaintiff's claims of unfairness and unconscionability, but both sides cite federal and Arizona law. The Court will do the same.

Arizona recognizes both procedural and substantive unconscionability. A contract is procedurally unconscionable if it results from a grossly unfair bargaining process. Thus, procedural unconscionability "is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 88-89 (1995) (citation and quotation marks omitted). A contract is substantively unconscionable if it gives rise to grossly unfair results; for example, if the contract is "so one-sided as to oppress or unfairly surprise an innocent party," if there is "an overall imbalance in the obligations and rights imposed by the bargain," or if there is a "significant cost-price disparity." *Id.* at 89. "[A] claim of unconscionability can be established with a showing of substantive unconscionability alone." *See id.* at 90.

The party seeking to avoid application of an arbitration provision has the burden of proving the provision unenforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**III. Analysis.**

Plaintiff claims that various provisions of the Warranty arbitration clause are invalid. The Court will address them separately.

**A. PWC's Sole Right to Select the Arbitration Service.**

As noted above, because Construction Arbitration Services, Inc. is out of business, the Warranty empowers PWC to select the arbitration service that will arbitrate Plaintiff's claims. Doc. 25 at 38. Plaintiff argues that this provision is unconscionable because PWC is closely aligned with Defendants.

In *Nishimura v. Gentry Homes, Ltd.*, 134 Haw. 143 (2014), the Hawaii Supreme Court invalidated this very arbitration provision. The court applied the Sixth Circuit's "fundamental fairness" standard for determining whether an arbitration provision is enforceable. *Id.* at 149 (citing *McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004)). An arbitration provision is fundamentally unfair if it "'grants one party to the arbitration unilateral control over the pool of potential arbitrators.'" *Id.* at 149-50 (citing *McMullen*, 355 F.3d at 494). A provision is also fundamentally unfair if the entity charged with selecting the pool of arbitrators has a "'symbiotic relationship'" with a party, such that the party effectively determines the pool of arbitrators. *Id.* at 150 (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 388 (6th Cir. 2005)).

Applying this standard, the Hawaii Supreme Court explained:

> Ordinarily, an arbitration agreement is valid unless there is some basis to refuse to enforce it. In this case, PWC's identification with [the homebuilder] provides a basis for finding the arbitrator-selection provision unenforceable as fundamentally unfair. The plain language of the arbitration agreement shows that PWC acts on [the builder's] behalf in administering the [warranty], which would include selecting an arbitration service, at PWC's "sole discretion," now that Construction Arbitration Services, Inc. is no longer available. As PWC acts on [the builder's] behalf under the [warranty], the [plaintiffs'] concern that PWC's exercise of its sole discretion is akin to [the homeowner's] exercise of such discretion is legitimate. As such, under [the Sixth Circuit's test], the [warranty's] arbitrator-selection provision, which "grants one party to the arbitration unilateral control over the pool of potential arbitrators . . . prevents [the arbitration] from being an effective substitute for a judicial forum because it inherently lacks neutrality"; therefore, the arbitrator-selection process is fundamentally unfair.

*Id.* at 153 (citations omitted).

Defendants urge the Court to disregard this decision of the Hawaii Supreme Court. Citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), Defendants argue that the regularity and fairness of arbitration procedures are presumed, and that Plaintiff cannot obtain a pre-arbitration determination that procedures in the Warranty are invalid. Because they are faced only with *potential* unfairness, Defendants argue, Plaintiff must proceed with arbitration before the PWC-selected arbitration service and then raise fairness challenges if unfairness arises in the arbitration itself.

The Court does not agree. Federal courts have noted that, "[u]nder *Gilmer*, the arbitral forum must provide litigants with an effective substitute for the judicial forum[.]" *McMullen*, 355 F.3d at 492 (quotation marks and citations omitted). Thus, federal courts entertain pre-arbitration challenges based on unconscionability of arbitration procedures. *See*, *e.g.*, *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 980 (9th Cir. 2007) (invalidating arbitration provisions on the basis of unconscionability); *McMullen*, 355 F.3d at 492-94 (same); *Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (same).

Defendants also claim that *Nishimura* is distinguishable because it found that PWC had a conflict of interest due to its close relationship with Zurich Insurance Company, the insurer of another homebuilder facing a lawsuit over the same construction defect. Doc. 25 at 12; *see Nishimura*, 134 Haw. at 145. Defendants assert that Zurich has no connection to this case. Doc. 25 at 53, ¶ 11. But the Hawaii Supreme Court made no reference to Zurich in holding the arbitration provision unenforceable. It relied instead on the fact that "PWC acts on [the homebuilder's] behalf in administering [the warranty]." *Nishimura*, 134 Haw. at 153. The same is true here. Defendants state in the Warranty that "PWC's *sole responsibility* is to administer this LIMITED WARRANTY on OUR behalf." Doc. 25 at 39 (italics added). Elsewhere, Defendants refer to "parties acting on OUR behalf, *including PWC*." *Id.* at 37 (emphasis added). There can be no doubt that PWC's role under the Warranty is to act on Defendants' behalf. Indeed,

- 6 -

1  Defendants state that this is PWC's "sole responsibility." *Id.* at 39.

2  Evidence presented by Plaintiff similarly shows that PWC has a "symbiotic relationship" with Defendants and the construction industry. *Cf. Walker*, 400 F.3d at 388. PWC sells home warranty products to the construction industry, and targets this industry with advertisements claiming that its "warranty solutions sell more homes." Doc. 20-10 at 2. PWC claims that its warranty products provide "layers of protection to you as a builder" that "truly allow you to manage your risk." *Id.* at 3.

Given this evidence and the language of the Warranty identifying PWC as Defendants' agent, the Court concludes that PWC "has an incentive to maintain its contractual relationship with [Defendants] and other such business partners" by selecting arbitration services likely to provide favorable rulings for its clients. *Geiger*, 134 F. Supp. 2d at 995. The Court agrees with *Nishimura*: "[Plaintiff's] concern that PWC's exercise of its sole discretion is akin to [the home builder's] exercise of such discretion is legitimate." *Nishimura*, 134 Haw. at 153.

An arbitration provision that leaves a party without a neutral forum in which to enforce its rights – either because it "grants one party to the arbitration unilateral control over the pool of potential arbitrators," *McMullen*, 355 F.3d at 494, or because it places that decision in the hands of an entity that has a "symbiotic relationship" with one of the parties, *Walker*, 400 F.3d at 388 – can fairly be described as "so one-sided as to oppress or unfairly surprise an innocent party," *Maxwell*, 184 Ariz. at 89, or as "deny[ing] a potential litigant the opportunity to vindicate his or her rights," *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252 (Ct. App. 2005). The Court concludes that Plaintiff has met her burden of showing that the Warranty arbitration provision is invalid under the generally applicable unconscionability principles of Arizona law. The Court reaches the same conclusion under the fundamental fairness test of *McMullen*, 355 F.3d at 494.

**B.  Other Provisions of Section VIII.**

Plaintiff notes that the Warranty contains other troubling provisions. It provides, for example, that Defendants or their "authorized representative" – presumably PWC –

have the "sole" discretion to determine whether to repair any defect found by the arbitrator, pay an amount equal to Defendants' cost of repair (regardless of whether that amount would be sufficient to Plaintiff's cost of repair), or pay the diminution in value of Plaintiff's home. Doc. 25 at 39. This provision appears to take any such selection out of the hands of the arbitrator.

In addition, if Plaintiff believes that Defendants are not complying with the arbitrator's decision, Plaintiff must present that concern to PWC. PWC will then "mediate" the dispute between Plaintiff and Defendants, even though PWC is not neutral. *Id.* If the mediation does not resolve the dispute, then a "compliance inspection arbitration" is to occur, with no specification as to who the arbitrator will be. Plaintiff notes that one service used by PWC would charge Plaintiff $1,250 for such an arbitration, a fact not disputed by Defendants' counsel during oral argument.

Thus, in addition to granting PWC sole power to choose the initial arbitration service, the Warranty provides that Defendants and PWC may choose the remedy they will accept, even if it will pay Plaintiff less than her cost of repairs. And if Plaintiff believes that Defendants are not complying with the decision from the arbitration service selected by PWC, what is her recourse? To complain to PWC and participate in a "mediation" handled by PWC. If she still does not like the outcome, she can pay $1,250 to have another arbitration on the question of whether Defendants are complying with the first arbitration, to occur before an unspecified arbitrator following unspecified procedures. Nothing in the Warranty prevents PWC from designating itself as the arbitrator in this second arbitration.

Perhaps understandably, Defendants make little effort to defend the fairness of these procedures. Instead, defense counsel suggested at oral argument that Defendants might not insist that Plaintiff pay the $1,250 for a second arbitration and that the Court could, if dissatisfied with these procedures, strike them enforce the rest of Section VIII.

These unfair procedures only confirm the one-sided nature of Section VIII of the Warranty. Its provisions stack the deck in favor of Defendants. It is not an "effective

- 8 -

1 substitute for the judicial forum[.]" *McMullen*, 355 F.3d at 492 492 (quotation marks and
2 citations omitted).

3     **C.**    **Defendants' Blue Pencil Suggestion.**

4 Defendants ask the Court to "blue pencil" the arbitration provision if it finds some
5 provisions invalid, eliminating only the invalid portions and leaving the rest of Section
6 VIII intact. This is unnecessary, however, because the ADR addendum itself states what
7 should happen if the arbitration provisions in the Warranty "are determined to be
8 unenforceable in whole or in material part" – the parties should arbitrate before the AAA.
9 Doc. 25 at 26. The Court concludes that the provisions of Section VIII of the Warranty
10 are unenforceable, "preventing their use" within the meaning of the ADR provision, and
11 that the parties accordingly should proceed with arbitration before the AAA.

12     **IT IS ORDERED:**

13     1.    Plaintiff's motion for summary judgment (Doc. 19) is **granted.** The Court
14     holds that Section VIII of the Warranty (Doc. 25 at 37-39) is unenforceable
15     and that arbitration should proceed before the AAA in accordance with the
16     ADR addendum (Doc. 25 at 26).

17     2.    The Clerk shall enter judgment accordingly and terminate this action.

18 Dated this 12th day of August, 2016.

David G. Campbell
United States District Judge

- 9 -